## 27726. BLAIR v. THE STATE.

JORDAN, Justice. James Blair appeals his conviction and sentence to life imprisonment for the murder of Jerome Jones. *Held:*

1. Based on the assertion of an illegal arrest and the detention resulting therefrom, the defendant contends that the trial judge erred in admitting evidence, including statements from the defendant, and, more particularly, statements concerning the alleged weapon used, a knife.

It is undisputed that the homicide by stabbing occurred on January 1, 1971; that on the same day within hours after the event, the defendant, who was at the scene of the incident when it occurred, was apprehended some ten miles away; but that a warrant for his arrest was not issued until January 3, 1971, which mistakenly dated the event on January 3, 1971, although the warrant is supported by an affidavit fixing the date as January 1, 1971.

The stabbing occurred in the home of Gene Autry McFearin, Sr., in Bryan County, where a party was in progress celebrating McFearin's birthday. Officer Raulerson, a deputy sheriff of Bryan County, acting pursuant to a report of a stabbing at the McFearin home and accompanied by another deputy who had reported the matter to him, proceeded to the McFearin home. Raulerson recalled that when he arrived McFearin's wife, four children, and his father, "old man McFearin," were there. He entered the house and observed blood in the bathroom. Other testimony discloses that all of these persons were in the immediate area when the incident occurred, and to some degree were familiar with events which transpired before, during, and after the stabbing. While the extent of investigation made by Raulerson

on the scene at this point is not entirely clear, he was unequivocal in testifying that "after arriving, it was determined that James [Blair] was the one that did it." He proceeded from there to a hospital and ascertained that Jones was dead on arrival. He received permission to look at the body and observed a stab wound in the chest. Gene Autry McFearin and Harley Waters had brought Jones to the hospital and were there when Raulerson arrived. They accompanied Raulerson at his request when he left, and were with him and the other deputy when he located and arrested Blair in Chatham County at Morgan's Bridge. Before arresting Blair, Raulerson told McFearin and Waters that he had information "that James Blair did it."

In our opinion the evidence, as above detailed, and the logical inferences arising therefrom, clearly support the arrest of James Blair on January 1, 1971, as a prime suspect for the murder of Jerome Jones, within the authority of Code § 27-207 authorizing a law enforcement officer to make an arrest of a suspected offender without a warrant where the offense is not committed in his presence, if the suspect is endeavoring to escape or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant. For this reason it is unnecessary to consider the efficacy of the arrest warrant subsequently issued in respect to the assertions here under consideration.

Enumeration 5, 6, and 9 are without merit.

2. The defendant complains of a failure to comply with the provisions set forth in Code Ann. § 27-212, requiring the release of a person arrested without a warrant unless brought within 48 hours before an officer authorized to receive an affidavit and issue a warrant, and Code Ann. § 27-210, requiring a committment hearing within 72 hours for a person arrested under a warrant.

The only fact to be gleaned from the record and transcript

to support any violation of § 27-212 is that the warrant as issued within 48 hours is invalid because of the mistaken reference to the date of the offense as January 3, 1971, instead of January 1, 1971, as shown by the supporting affidavit. This technical deficiency did not invalidate the warrant. See *Kumpe v. Hall,* 167 Ga. 284 (145 SE 509).

The mere fact that the defendant was thereafter detained until January 8, 1971, without a committment hearing is not per se sufficient to invalidate further proceedings or render evidence obtained from him during this period inadmissible. For a discussion of the considerations involved in an analogous situation, see *Wilson v. State,* 229 Ga. 395 (191 SE2d 783).

Enumerations 7 and 8 are without merit.

3. The defendant next argues that the trial judge erred in allowing in evidence statements obtained from the defendant involuntarily, by coercion, and without the knowledge and consent of his appointed counsel.

If the defendant was properly advised and made aware of his constitutional rights, i.e., the Miranda warning, the fact that thereafter while in custody he knowingly and voluntarily elected to talk, without the knowledge or consent of his appointed counsel, is no cause for complaint. The evidence adduced before the trial judge on the issue of admissibility authorized the conclusion that appropriate constitutional procedural safeguards in keeping with the Miranda requirements and other cases were followed and that the defendant talked voluntarily and without coercion, in full awareness of his rights, and that he waived the presence of appointed counsel.

Enumerations 10, 11, and 12 are without merit.

4. The next two enumerations assert error in allowing a witness to read notes instead of using the notes to refresh his memory, and in refusing to allow counsel for the defendant to inspect the notes and cross

examine the witness in respect thereto.

In our opinion the transcript here discloses that to the extent the trial judge allowed the witness to read from his notes, the witness was properly being allowed "to swear positively from the paper." Code § 38-1707. Any error in restricting access of opposing counsel to the notes as used by the witness in testifying was, in our opinion, harmless under the circumstances here shown. The contention that the trial judge erred in restricting cross examination is unsupported by the transcript.

Enumerations 13 and 14 are without merit.

5. The defendant next contends that the trial judge erred in failing to charge the law of manslaughter and mutual combat.

The transcript clearly reveals a prosecution and a defense on the theory of murder or nothing, and although there is testimony to support the statement in the brief of the defendant that "there is no doubt that there was nothing but a drunken brawl at the McFearin home on the night of January 1, 1971" the testimony in this respect fails to link the victim's death by stabbing to any sort of encounter between the victim and the defendant which would give rise to a basis for instructions on manslaughter or mutual combat. There is no doubt that the victim was drunk and the defendant admitted to the jury that he was drunk, stating "I was pretty well lit." Under the state's theory, supported by eyewitnesses and an extrajudicial confession, the defendant made an unprovoked assault on the victim, first with a piece of glass and then with a knife. The defendant admitted and repudiated his confession, maintaining in effect that he confessed under coercion to take the pressure off his half-brother, Harley Waters, who was present and who helped take the victim to the hospital. In answer to the question, "Did you kill Jerome Jones?" he told the jury: "No, sir,

'cause I never had no reason to do it." In answer to the question, "Have you ever been in any fight with him?" he referred to "a couple of words over at the Blue Moon" but made no mention whatsoever of any altercation at the McFearin home.

Enumerations 15, 16, and 17 are without merit.

6. The remarks of the trial judge to the jury, in declaring a recess until the next day, that there would.be more evidence "by both sides, I assume" disclose no basis for error.

Enumeration 18 is without merit.

7. The post-trial affidavit of one of the witnesses for the state, which is merely impeaching in character, does not require the grant of a new trial on the basis of newly discovered material evidence under the provisions of Code § 70-204.

Enumeration 19 is without merit.

8. The verdict is supported by the evidence, no error of law appears, and the trial judge did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 12, 1973 — DECIDED APRIL 13, 1973.

*Barker & Edenfield, Tom A. Edenfield,* for appellant. *J. Max Cheney, District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, David L. G. King, Jr., Assistant Attorneys General,* for appellee.